**STINSON LLP**
1144 Fifteenth St., Suite 2400
Denver, CO 80202
Tel: 303.376.8400
Zane A. Gilmer, Atty. Reg. No.  7-4545
Zane.Gilmer@stinson.com

Patrick A Edwards (Pro Hac Vice Pending)
1625 N. Waterfront Parkway, Suite 300
Wichita, KS 67206
Tel: 316.265.8800
Patrick.Edwards@stinson.com

David R. Barnard (Pro Hac Vice Pending)
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Tel: 816.842.8600
David.Barnard@stinson.com

Adrianna M. Chavez (Pro Hac Vice Pending)
1850 N. Central Avenute, Suite 2100
Phoenix, AZ 85004
Tel: 602.279.1600
Adrianna.Chavez@stinson.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| JORNS & ASSOCIATES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| WCMS MEDIA LLC and JESS E. ROGERS, SR., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## **COMPLAINT**

Plaintiff Jorns & Associates LLC ("Plaintiff" or "Jorns") files this Complaint against

Defendants WCMS Media LLC ("WCMS") and Jess E. Rogers, Sr. ("Rogers") (WCMS and

1

Rogers are collectively "Defendants"). In support of its Complaint, Jorns alleges and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Jorns is a limited liability company organized under the laws of the State of Wyoming, with its principal office in Wyoming located at 30 N. Gould Street, Suite R, Sheridan, Wyoming 82801.

2.    Defendant WCMS is a limited liability company organized under the laws of the State of Colorado, and may be served with process through its registered agent, GK Rogers at 8547 East Arapahoe Road, Unit J, Suite J250, Greenwood Village, Colorado 80112.

3.    Defendant Rogers is an individual who, upon information and belief, can be served with process at his residence located at 95 Martingale Lane, Edwards, Colorado 81632.

4.    The Court has subject matter jurisdiction over this civil dispute because it raises a federal question under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b).

5.    Personal jurisdiction exists with this Court.  Defendant Rogers signed the Consulting Agreement (explained in more detail in paragraphs 20 to 27 and paragraph 34 below), which requires that any legal action arising out of or relating to it to be brought exclusively in Wyoming federal or state court.  On information and belief, Defendant WCMS was at all times controlled, at least in part, by Defendant Rogers, was Defendant Rogers' agent in regards to the facts alleged here, served as the recipient for all revenue Jorns paid for Rogers' services to Jorns, and did business with Jorns in this District, making personal jurisdiction appropriate.

6.    Venue is proper in this Court.  Defendant Rogers signed the Consulting Agreement, which requires that any legal action arising out of or relating to it to be brought exclusively in

2

Wyoming federal or state court.  On information and belief, Defendant WCMS was at all times controlled, at least in part, by Defendant Rogers, served as the recipient for all revenue Jorns paid for Rogers' services to Jorns, and did business with Jorns in this District.  As detailed below, a substantial part of the events and omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated in the District of Wyoming.  Accordingly, venue is appropriate under 28 U.S. Code § 1391(b)(2 and 3).

## BACKGROUND FACTS

7.      Jorns was founded during the start of the COVID-19 pandemic.

8.      Jorns assists its clients with applying for and obtaining funds from various COVID-19 economic stimulus programs.

9.      Jorns has a specific focus on COVID-19 economic stimulus funds called Employee Retention Tax Credits ("ERTC"), which are a refundable tax credit issued by the federal government to qualifying businesses that retained employees despite being affected by the COVID-19 pandemic.

10.     ERTCs are available to eligible employers that paid qualified wages to some or all retained employees after March 12, 2020 and before January 1, 2022.

11.     Eligibility and credit amounts vary depending on when the business impacts occurred.

12.     As part of its business, Jorns contracts with referral agencies to identify and refer potential clients whom Jorns can potentially assist in acquiring ERTCs.

13.     After a client is referred to Jorns, Jorns then works directly with the client to compile the necessary documentation and information from the client, evaluate whether the client may qualify for the ERTC program, and prepare the ERTC application documents (including the

Amended 941-X form) for the client to review, confirm and execute for filing.

14.     If the client qualifies for the ERTC program and receives ERTC funds from the federal government, then Jorns is entitled to receive a contingency fee from the client.

15.     After Jorns receives its contingency fee payment from the client, Jorns in turn pays the applicable referral agency a commission.

16.     WCMS has served as a referral agency to Jorns since January 13, 2022, when Jorns and WCMS signed a Referral Agreement governing their relationship that provides that Jorns will pay WCMS a commission of 3% of the total ERTC received by each applicable client referred to Jorns by WCMS.

17.     In 2021, Jorns identified certain strategies, calculations, and methods for assisting Jorns' clients in obtaining the maximum amount of ERTC credits available while still being in compliance with applicable federal legislation and IRS guidance.

18.     However, Jorns realized that in order to maximize its business model, it would be beneficial to automate the calculations to allow Jorns to better assist its ERTC clients.

19.     Jorns was introduced to Rogers in approximately early 2022.

20.     On March 12, 2022, Jorns and Rogers entered into a Consulting Agreement.

21.     The Consulting Agreement was for a one-year term that automatically renewed through December 31, 2024 unless either party provided applicable notice of its termination.

22.     Under this Consulting Agreement, Rogers agreed to provide a broad variety of services to "assist [Jorns] with the process to file for the Employee Retention Tax Credit ("ERTC") on behalf of [Jorns'] clients. . . . The work and services herein provided for will be furnished by [Rogers] from time to time upon oral or written request by [Jorns]."

23.     The Consulting Agreement specifies that Rogers is an independent contractor, and

4

that Rogers will be compensated by Jorns for the services that he provides under the Consulting Agreement according to an attached Fee Schedule.

24.     The Consulting Agreement further specifies that Rogers shall not perform any related or similar services to other businesses or individuals during the term of the Consulting Agreement and for two years thereafter, and Rogers represented that he "presently has no conflicting interests, agreements or obligations with or to any other party."

25.     The Consulting Agreement further specifies that in performing the particular work and services for Jorns, Rogers "will acquire confidential information regarding the clients of [Jorns], [Jorns'] business and affairs, and the methods of operation developed by [Jorns] for the management and performance of its ERTC services", including "business practices", "training and operational materials", "computer programs and software", "accounting or auditing programs or techniques", "data compilations", "financial information", "business plans and marketing information", and other "trade secret and proprietary information".

26.     The Consulting Agreement makes clear that Rogers shall not disclose or allow anyone else to disclose any such Confidential Materials, and at the end of the term of the Consulting Agreement, Rogers shall promptly return all such "Confidential Materials" and all other Jorns' property in his possession to Jorns without keeping a copy for himself.

27.     The Consulting Agreement is governed by Wyoming law, includes a prevailing party attorney's fees provision, and requires any legal action arising out of or relating to it to be brought exclusively in Wyoming federal or state court.

28.     On May 23, 2022, Rogers and Jorns signed an agreement called "Addendums to Jess Rogers IC Aggreement [sic] & WCMS Media LLC Referral Agreement" (referred to herein as the "Addendum").

29.     The purpose of the Addendum was to address a particular scope of work that Rogers and his company, WCMS, would provide to Jorns – the development of a tool in Microsoft Excel to automate the computation of ERTC benefits for individual Jorns' clients, using algorithms in Microsoft Excel.

30.     These algorithms are referred to as the "MAPS Software" or the "AWDS Software".

31.     The Addendum requires that Rogers and WCMS make the AWDS Software available to Jorns upon execution of the Addendum, and specifies that "[s]upport to the software and updates are included throughout the program."

32.     The Addendum further provides that "[t]he addendum is contingent upon the successful performance of the AWDS Software Developed primarily by Jess Rogers with assistance from Jorns & Associates to calculate the ERC amounts for any clients, past, present, or future." (emphasis added).

33.     In exchange for Rogers' and WCMS' services provided under the Addendum, Jorns agrees to pay WCMS (i) $10,000.00 per month for four months "up front", (ii) a 1% commission on the book of business for Doug Kolker ("Kolker"), one of Jorns' members, capped at $500,000.00, (iii) a 1% commission on the book of business for Tony Swantek ("Swantek"), Jorns co-founder and Chief Operating Officer, capped at $500,000.00, and (iv) an increase in the commission paid by Jorns to WCMS for all ERTC clients referred by WCMS to Jorns from 3% to 10% (a 7% increase), with this increase applying moving forward as well as being retroactive to all previous clients referred by WCMS.

34.     The Addendum attaches the Consulting Agreement between Rogers and Jorns, reaffirming the same.

35.     The Addendum also attaches a new Referral Agreement between Jorns and WCMS

CORE/3524632.0011/186522395.7

that includes the increased commission referenced above, and the Addendum specifies that the new Referral Agreement supersedes the original Referral Agreement between the parties.

36.    The new Referral Agreement between Jorns and WCMS governs the potential ERTC clients that WCMS refers to Jorns, and it is for a term that runs through April 15, 2025 unless terminated by either party by providing applicable notice.

37.    The new Referral Agreement acknowledges that WCMS will not share and will not use for its personal benefit any of Jorns' proprietary information, trade secrets, industry knowledge, and other confidential information that is shared with WCMS.

38.    The new Referral Agreement between Jorns and WCMS is governed by Wyoming law and includes a prevailing party attorney's fees provision.

39.    Notably, without the MAPS Software and the associated commitments by Rogers and WCMS, Jorns never would have agreed to pay Rogers or WCMS a 1% commission on Kolker's or Swantek's books of business or increased the commission to be paid to WCMS on its client referrals from 3% to 10%.

40.    Jorns and Rogers worked together to develop the MAPS Software.

41.    Notably, the MAPS Software serves no purpose or function other than to assist in the computation of ERTC benefits.

42.    There were various iterations of the MAPS Software, and Jorns worked extensively with Rogers to improve, update, streamline, and simplify the MAPS Software to make it more effective, user friendly, and applicable to Jorns' business.

43.    Since May 2022, Jorns has successfully implemented the MAPS Software into its business.

44.    Over time since 2022, Jorns has contracted with certain independent contractors

and hired certain employees who are related to and/or otherwise affiliated with Rogers.

45.    WCMS regularly sent Jorns invoices requesting payment pursuant to the Addendum.

46.    From May 23, 2022 to December 29, 2023, Jorns has paid the following amounts to Rogers and WCMS pursuant to the Addendum: (i) $40,000.00 in "up front" payments, (ii) $500,000.00 in payments related to Kolker's book of business; (iii) $500,000.00 in payments related to Swantek's book of business; and (iv) approximately $661,822.92 in commissions to WCMS for its ERTC client referrals.

47.    Notably, with respect to payments made through December 29, 2023, the increase in the Addendum in WCMS's commission on its ERTC client referrals from 3% to 10% (a 7% increase) has resulted in approximately an additional $548,614.92 in payments to WCMS compared to what WCMS would have received if its commission remained at 3%.

48.    Over the past several months, Jorns relationship with Rogers and certain of Jorns' independent contractors and employees who are related to or otherwise affiliated with Rogers has deteriorated.

49.    Jorns recently learned that although the Addendum provides that Rogers will support and update the MAPS Software as part of the services provided under the Addendum (*i.e.*, at no additional charge), Rogers has been invoicing Jorns, and Jorns has been paying, for Rogers' work in supporting and updating the MAPS Software at an hourly rate of $200.00 per hour.

50.    Additionally, Jorns has recently learned information that causes it to believe that Rogers has been billing Jorns for certain services covered by the Consulting Agreement that in fact were performed by one or more independent contractors for Jorns (one or more of whom is related to and/or otherwise affiliated with Rogers), which is significant because Rogers again was

billing Jorns for these services at a rate of $200.00 per hour for work done by other independent contractor(s) whose billing rate was $100.00 per hour.

51.     In November and December 2023, Jorns terminated certain of its independent contractors and employees who are agents of, related to, and/or otherwise affiliated with Rogers.

52.     On December 21, 2023, an attorney purporting to represent Rogers and four other terminated independent contractors and employees of Jorns who are agents of, related to, and/or otherwise affiliated with Rogers, sent a letter to Jorns in-house counsel, instructing Jorns to preserve all relevant evidence and accusing Jorns, among other things, of misappropriation of intellectual property and breach of contract.

53.     The December 21, 2023 letter demands that Jorns "discontinue[e] the use of Jess Roger's intellectual property" and "immediately stop using any such intellectual property [claimed to be owned by Rogers] . . . includ[ing] the ERC Maps, MAPS Multiverse, AWDM, PPP-DDTS software and programs, and any derivatives or modified versions thereof, and any other software, programs, algorithms, using or based thereon, which is the sole and exclusive intellectual property of Jess Rogers."

54.     The December 21, 2023 letter further states that "[a]ny license or use right which have been granted to Jorns is specifically revoked except to the extent mandated otherwise by express legal or contractual provision and then only to the extent your breach of contract did not excuse further performance by any other party."

55.     Additionally, the December 21, 2023 letter demands that Jorns return "all tangible intellection property to each of my clients immediately (including, without limitation notes, manuals, programs, depictions, and any other such materials)", and threatens that an emergency action for a protective order and an additional claim for damages will be filed for any "continued

use, misuse, or misappropriation of intellectual property".

56.     On December 27, 2023, Rogers' attorney notified Jorns' in-house counsel by email that "Rogers is terminating the consulting agreement he entered with Jorns."

57.     The December 27, 2023 email reiterates Rogers' claim that Jorns does not own the MAPS Software and is not authorized to use it under any circumstances.

## COUNT I – BREACH OF CONTRACT

58.     Jorns restates and incorporates by reference the statements and allegations set forth in Paragraphs 1 to 57 above as if fully set forth herein.

59.     Jorns, Rogers, and WCMS entered into the Addendum, which is a lawfully enforceable contract that attaches and incorporates the Consulting Agreement with Rogers and new Referral Agreement with WCMS.

60.     Whether by operation of the confidentiality provisions of the Consulting Agreement and/or through the additional language and consideration in the Addendum, Jorns owns the MAPS Software.

61.     Moreover, through the Addendum, Rogers and WCMS agreed to support and update the MAPS Software "throughout the program" at no additional charge.

62.     Jorns fully performed its obligations under the Addendum, and has paid Rogers and WCMS a total of approximately $1,588,614.92 from May 23, 2022 to December 29, 2023 pursuant to the Addendum.

63.     By revoking Jorns' ownership in, right to use, and/or license in the MAPS Software and demanding that Jorns immediately cease all use of the MAPS Software in the December 21, 2023 letter and the December 27, 2023 email, Rogers and WCMS have breached the Addendum.

64.     Rogers and WCMS further breached the Addendum by billing Jorns for Rogers'

CORE/3524632.0011/186522395.7

services in supporting and updating the MAPS Software, and through the implicit refusal in the December 21, 2023 letter and the December 27, 2023 email to continue to provide any support or updates to the MAPS Software moving forward.

65.     Rogers' and WCMS' breach of the Addendum has caused, and will continue to cause, damages and injury to Jorns, as Jorns has paid approximately $1,588,614.92 to Rogers and WCMS pursuant to the Addendum but Jorns has not received, and will not receive, the full benefit of the MAPS Software that it purchased through the Addendum.

66.     As a result of this breach by Rogers and WCMS, Jorns is entitled to reimbursement from Rogers and WCMS for some or all of the approximately $1,588,614.92 that Jorns has paid Rogers and WCMS pursuant to the Addendum.

67.     Under the terms of the Consulting Agreement and new Referral Agreement which are attached to and incorporated in the Addendum, Jorns also is entitled to its reasonable attorney's fees incurred in bringing this matter as the prevailing party.

WHEREFORE, Plaintiff Jorns & Associates LLC prays that judgment be entered in its favor and against Defendants WCMS Media LLC and Jess E. Rogers, Sr. on Jorns' claim for breach of contract, for a declaratory judgment that Jorns, and not Rogers or WCMS, own all rights in the Confidential Information as defined by the Consulting Agreement and the Addendum, for a permanent injunction requiring Rogers and WCMS to return or transfer to Jorns all of Jorns' Confidential Information in their custody, to delete any remaining copies of such Confidential Information, and to cease using same, and that damages be awarded in favor of Jorns and jointly and severally against Rogers and WCMS for an amount to be determined at trial but in excess of $75,000.00, plus interest accruing on that amount at the highest amount allowed under Wyoming law, plus Jorns' reasonable attorney's fees and costs incurred in bringing this action, together with

11

such other and further relief as the Court deems fair and equitable.

## COUNT II – ANTICIPATORY BREACH OF CONTRACT
### (Pled in the Alternative to Count I)

68.     Jorns restates and incorporates by reference the statements and allegations set forth in Paragraphs 1 to 67 above as if fully set forth herein.

69.     Jorns, Rogers, and WCMS entered into the Addendum, which is a lawfully enforceable contract that attaches and incorporates the Consulting Agreement with Rogers and new Referral Agreement with WCMS.

70.     Through the Addendum, Jorns purchased the MAPS Software from Rogers and WCMS.

71.     Moreover, through the Addendum, Rogers and WCMS agreed to support and update the MAPS Software "throughout the program" at no additional charge.

72.     Jorns fully performed its obligations under the Addendum, and has paid Rogers and WCMS a total of approximately $1,588,614.92 from May 23, 2022 to December 29, 2023 pursuant to the Addendum.

73.     In the December 21, 2023 letter and the December 27, 2023 email, Rogers and WCMS revoked Jorns' ownership in, right to use, and/or license in the MAPS Software, demanded that Jorns immediately cease all use of the MAPS Software, and implied that Rogers and WCMS would no longer provide support or updates to the MAPS Software moving forward, which alternatively constitutes an anticipatory breach of the Addendum by Rogers and WCMS.

74.     Rogers' and WCMS' anticipatory breach of the Addendum will cause damages and injury to Jorns, as it will prevent Jorns from receiving the full benefit of the MAPS Software that Jorns purchased through the Addendum.

75.     Under the terms of the Consulting Agreement and new Referral Agreement which

CORE/3524632.0011/186522395.7

are attached to and incorporated in the Addendum, Jorns also is entitled to its reasonable attorney's fees incurred in bringing this matter as the prevailing party.

WHEREFORE, pled in the alternative to Count I above for breach of contract, Plaintiff Jorns & Associates LLC prays that judgment be entered in its favor and against Defendants WCMS Media LLC and Jess E. Rogers, Sr. on Jorns' claim for anticipatory breach of contract, that the Court declare that Jorns either owns or holds an irrevocable license in the MAPS Software pursuant to the Addendum, and that damages be awarded in favor of Jorns and jointly and severally against Rogers and WCMS for an amount to be determined at trial but in excess of $75,000.00, plus interest accruing on that amount at the highest amount allowed under Wyoming law, plus Jorns' reasonable attorney's fees and costs incurred in bringing this action, together with such other and further relief as the Court deems fair and equitable.

### COUNT III – UNJUST ENRICHMENT
#### (Pled in the Alternative to Count I)

76.     Jorns restates and incorporates by reference the statements and allegations set forth in Paragraphs 1 to 75 above as if fully set forth herein.

77.     Jorns rendered and provided value and a benefit to Rogers and WCMS by paying Rogers and WCMS a total of approximately $1,588,614.92 from May 23, 2022 to December 29, 2023 for the purchase of the MAPS Software.

78.     Rogers and WCMS appreciated, accepted, used, and enjoyed these payments from Jorns.

79.     Rogers and WCMS were reasonably notified that Jorns expected either full ownership of or an irrevocable license in the MAPS Software in exchange for its payments to Rogers and WCMS.

80.     Under these circumstances, it would make it inequitable for Rogers and WCMS to

CORE/3524632.0011/186522395.7

assert dominion over the MAPS Software and deny and revoke Jorns the right of full ownership in the MAPS Software when Jorns has paid Rogers and WCMS for the MAPS Software.

WHEREFORE, pled in the alternative to Count I above for breach of contract, Plaintiff Jorns & Associates LLC prays that judgment be entered in its favor and jointly and severally against Defendants WCMS Media LLC and Jess E. Rogers, Sr. on Jorns' claim for unjust enrichment in an amount to be determined at trial but in excess of $75,000.00, plus interest accruing on that amount at the maximum rate allowed by law, plus Jorns' costs incurred in bringing this action, together with such other and further relief as the Court deems fair and equitable.

## COUNT IV – DEFEND TRADE SECRETS ACT VIOLATIONS

81.     Jorns restates and incorporates by reference the statements and allegations set forth in Paragraphs 1 to 80 above as if fully set forth herein.

82.     Jorns took reasonable efforts to maintain the confidentiality and privacy of the Confidential Information as defined in the Consulting Agreement, including, without limitation, limiting distribution of the software and requiring log-in security.

83.     The Confidential Information has substantial economic value because it is not available to the public, specifically Jorns' competitors.

84.     Jorns' efforts to keep the Confidential Information secret included but was not limited to obtaining Rogers' agreement to the confidentiality provisions of the Consulting Agreement and limiting access to the Confidential Information as set forth above.

85.     The software and other Confidential Information data and information available to Rogers was only available to him on a confidential basis and was not available to the public, is of significant value, and took significant resources and effort to create.

86.     On information and belief, Rogers is wrongfully retaining possession of the

14

Confidential Information.

87.    Rogers has wrongfully asserted dominion over the Confidential Information and demanded that Jorns cease using it under threat of legal action, in defiance of the Consulting Agreement, which contradicts his threats.

88.    Based on Rogers' wrongdoing and wrongful assertion of dominion over the trade secrets, Jorns has a reasonable basis to believe that Rogers has, is, and/or will commit further acts of misappropriation of the Confidential Information.

89.    Jorns has been damaged by Rogers' misappropriation of trade secrets in an amount to be determined at trial.

90.    Rogers' misappropriation of trade secrets was outrageous because of his willful indifference to Jorns' rights.

WHEREFORE, Plaintiff Jorns & Associates LLC prays that judgment be entered in its favor and against Jess E. Rogers, Sr. for all damages caused by his misappropriation of Jorns' Confidential Information, including without limitation, breaches of the Consulting Agreement, for a declaratory judgment that Jorns, and not Rogers and/or WCMS, own all rights in the Confidential Information as defined by the Consulting Agreement, for a permanent injunction requiring Rogers and WCMS to return or transfer to Jorns all of Jorns' Confidential Information in their custody, to delete any remaining copies of such Confidential Information, and to cease using same, and for Jorns' reasonable attorney's fees and costs incurred in bringing this action, together with such other and further relief as the Court deems fair and equitable.

Respectfully submitted,

By: */s/ Zane A. Gilmer*
     Zane A. Gilmer (Wyoming Bar #7-4545)
     **STINSON LLP**
     1144 Fifteenth Street, Suite 2400

15

Denver, Colorado 80202
Phone: 303-376-8416
Fax: 303-578-7966
zane.gilmer@stinson.com

*Attorney for Plaintiff Jorns & Associates LLC*

16